```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
CAMMEBY'S MANAGEMENT, COMPANY, LLC,      :
1-10 BUSH TERMINAL OWNER LP,             :
as successor in interest to 1-10         :
INDUSTRY ASSOCIATES, LLC; 19-20 BUSH     :
TERMINAL OWNER LP, as successor in       :
interest to 19-20 INDUSTRY CITY          :
ASSOCIATES, LLC,                         :
                                         :       13 Civ. 2814
        Plaintiff,                       :
                                         :       OPINION AND ORDER
        -v-                              :
                                         :
AFFILIATED FM INSURANCE COMPANY and      :
ALLIANT INSURANCE SERVICES, INC.,        :
                                         :
        Defendants.                      :
----------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

The resolution of the pending motion seeking judgment as a matter of law or a new trial is long overdue, but in one respect it presents a close call that has given the Court much hesitation. Hamlet, however, is not a good model for a judge (or, perhaps, anyone else), and so the Court hereby rules, and grants the motion in part -- though still not without hesitation.

The underlying action pits plaintiff Cammeby's Management Company ("Cammeby's") against both its insurer, defendant Affiliated FM Insurance Company ("Affiliated"), and its insurance broker, co-defendant Alliant Insurance Services, Inc. ("Alliant"). In its complaint, Cammeby's, which suffered more

1

than $30 million in losses as a result of Hurricane Sandy, alleged that even though Affiliated had contracted to cover such losses up to $30 million (the "Coverage Sublimit"), it only paid $10 million. In response, Affiliated disputed that the coverage amount was $30 million and counterclaimed for reformation of General Change Endorsement No. 3 to the insurance policy to reflect what it alleged was a $10 million Coverage Sublimit agreed to by the parties. In turn, Cammeby's asserted a negligence claim against its broker, Alliant, arguing that if the Coverage Sublimit were found to be only $10 million, then Alliant's negligence caused the reduction in coverage. Alliant, for its part, asserted the defense that Cammeby's ratified any allegedly negligent actions of Alliant's.

After an eight-day jury trial, the jury, on August 7, 2014, rendered a verdict that was partly advisory (because Cammeby's claim against Affiliated was ultimately a matter for the Court) and partly binding (because Cammeby's negligence claim against Alliant was reserved to the jury). See Verdict, Dkt. 266-10. In the advisory part of its verdict, the jury found that, as a result of a mutual mistake, the Coverage Sublimit was wrongly stated as $30 million in Endorsement No. 3 and was actually $10 million, so that Affiliated did not breach the insurance contract. But in the binding part of its verdict, the jury found

that Alliant's negligence caused the reduction of the Coverage Sublimit to $10 million, that Alliant had not proven its affirmative defense of ratification, and that Alliant was therefore liable to Cammeby's for the $20 million difference (plus interest).

Following post-trial briefing, the Court, on September 14, 2014, issued Findings of Fact and Conclusions of Law on Cammeby's breach of contract claim against Affiliated. See Findings of Fact and Conclusions of Law ("FFCL"), Dkt. 261. Addressing the matter de novo, but as it happens fully agreeing with the jury's advisory verdict, the Court granted Affiliated's counterclaim for reformation of Endorsement No. 3 and, accordingly, dismissed Cammeby's breach of contract claim against Affiliated. See FFCL at 14. Pursuant to the jury's binding verdict, however, Alliant was liable to Cammeby's for the $20 million difference. See FFCL at 14. After receiving a stipulation from the parties as to the amount of pre-judgment interest, see Dkt. 263, the Court entered final judgment on October 1, 2014, finding Alliant liable to Cammeby's in the sum of $20 million plus $3,205,479.45 in prejudgment interest, and dismissing Cammeby's claims against Affiliated. See Final Judgment, Dkt. 262.

The rulings and judgment in favor of Affiliated remain in place, and Affiliated is no part of the instant motion. But, following the entry of the final judgment, Alliant moved for judgment as a matter of law or, in the alternative, a new trial.[1] Cammeby's filed opposition papers, Alliant replied, and there the matter rested for some time. But the Court, having now considered the motion at great length, hereby denies the prong of Alliant's motion seeking judgment as a matter of law, but grants the prong of Alliant's motion seeking a new trial of Cammeby's negligence claim and Alliant's ratification defense.[2]

The first prong of Alliant's motion (not nearly as thorny as the second prong) seeks judgment as a matter of law against Cammeby's pursuant to Fed. R. Civ. P. 50(b) because, in Alliant's view, no reasonable jury could fail to find that Alliant proved its ratification defense. See Defendant Alliant Insurance Services, Inc.'s Memorandum in Support of Its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial ("Def. Br."), Dkt. 272, at 14. The Second Circuit has stated that "judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence

---

[1] Alliant also filed a notice of appeal on October 29, 2014, see Dkt. 274, but the appeal proceedings have been stayed pending resolution of the post-trial motion in this Court.

[2] The new trial will thus involve only Cammeby's and Alliant, not Affiliated.

supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998). Here, Alliant cites several communications between personnel at Cammeby's and personnel at Alliant that, according to Alliant, "show[] beyond reasonable dispute that Cammeby's unequivocally knew that Alliant had directed Affiliated to reduce the limits of flood coverage from $30 million to $10 million." Def. Br. at 14. However, Cammeby's presented ample evidence at trial, notably the testimony of Cammeby's Vice President Eli Schron and Cammeby's insurance consultant Stephen Gerber, from which a jury could reasonably conclude that an official with authority to speak for Cammeby's did not have knowledge of the coverage reduction. See, e.g., Plaintiffs' Memorandum of Law in Opposition to Defendant Alliant Insurance Services, Inc.'s Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) or, in the Alternative, a New Trial Pursuant to Fed. R. Civ. P. 59(a) ("Pl. Opp. Br.") at 19-24; Transcript of Trial Proceedings ("Tr.") 1723-24 (testimony of Eli Schron); 339 (testimony of Stephen Gerber). In particular, many of the

communications cited by Alliant involved Mr. Schron's assistant Sumita Ragbir, whose actual and apparent authority to speak for Cammeby's was the subject of reasonable dispute. See, e.g., Pl. Opp. Br. at 24-26; Tr. 347:21-348:3; 664-665; 1728:2-9. Alliant has not presented evidence that would justify overturning the jury's assessment of witness credibility and consideration of the weight of the evidence. See Galdieri-Ambrosini, 136 F.3d at 289 (in deciding a motion for judgment as a matter of law, "the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of witnesses or consider the weight of the evidence").[3] Alliant's motion for judgment as a matter of law is therefore denied.

The second, alternative prong of Alliant's motion, seeking a new trial pursuant to Fed. R. Civ. P. 59(a), is a more complicated matter. One of Alliant's arguments -- that a new

---

[3] Cammeby's also argues that Alliant's motion for judgment as a matter of law is precluded by the "law of the case" doctrine, according to which "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991); see Pl. Opp. Br. at 15-19. The Court had held in its summary judgment decision that reasonable disputes of material fact existed with respect to Alliant's ratification defense. See Opinion dated May 28, 2014 at 17-19. The Court had also construed Alliant's post-trial letter of August 25, 2014 "as a motion for a verdict in its favor notwithstanding the jury's verdict" and denied that motion. See FFCL at 14-15 n.5. However, the law of the case doctrine is discretionary. See Corporacion de Mercadeo Agricola v. Mellon Bank Int'l, 608 F.2d 43, 48 (2d Cir. 1979). Even if the Court were to decline to apply this doctrine or were to construe the instant motion as one for reconsideration of the Court's previous denial of Alliant's motion for judgment as a matter of law, Alliant's motion fails on its merits, for the reasons explained above.

6

trial should be granted because the verdict was against the weight of the evidence, see Def. Br. at 24-25 -- must be rejected, because, as just noted, a reasonable jury could have weighed the evidence to find in favor of Cammeby's on the negligence and ratification issues. But Alliant also moves for a new trial on the basis that the Court erroneously responded to the jury's questions about the elements of Alliant's ratification defense, see Def. Br. at 19-24 -- and there lies the rub.

"A new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 696 (2d Cir. 1993). In determining whether a jury instruction was erroneous, the Court must ask "whether considered as a whole, the instruction[] adequately communicated the essential ideas to the jury." United States v. Schultz, 333 F.3d 393, 413-14 (2d Cir. 2003) (internal modifications omitted). "Analysis of a judge's answer to a jury question follows the same reasoning utilized by a reviewing court to consider jury instructions provided by the trial judge." Urena v. Lape, 373 F. Supp. 2d 449, 458 (S.D.N.Y. 2005).

The Court's initial charge to the jury on Cammeby's ratification of the reduction in the Coverage Sublimit stated, in relevant part, as follows:

> To establish its defense of ratification, Alliant must prove, by a preponderance of the evidence, that even if Alliant acted beyond the scope of its actual authority from Cammeby's and that, as a result, the coverage was reduced to $10 million, Cammeby's had full knowledge that Alliant had taken these actions and clearly manifested its intent to approve these actions.

See The Court's Instructions of Law to the Jury, Dkt. 238, at 15. During jury deliberations on August 7, 2014, the jury sent out two notes relevant to Alliant's motion. The first, Jury Note #5, stated: "Your Honor, can you more clearly define what evidence constitutes 'full knowledge' in line 3 and 'clearly manifest' in line 4 on p. 15 of your Instructions of Law?" See Dkt. 266-5. The second, Jury Note #6, stated: "Judge Rakoff, we'd like to confirm please. On Defense of Ratification do both below conditions need to be determined as true in order for the defense to hold? 1 – full knowledge of actions taken; 2 – clearly manifested intent to approve actions." See Dkt. 266-6.

The Court then engaged in a discussion with counsel as to how to respond to both notes. During this discussion, Alliant's counsel stated his view that "[i]f the decisionmakers had knowledge, and they didn't do anything, I think that's ratification." Tr. 1901:11-12. The Court, however, believing

that Alliant had neither previously argued nor adequately proved any such theory, declined to adopt this view, and instructed the jury, over Alliant's objection, as follows:

> In answers to your questions regarding Alliant's ratification defense as set forth on page 15 of my instructions, "full knowledge" in this context means that an employee or agent of Cammeby's who had actual authority to approve a reduction in insurance coverage knew unequivocally that Alliant had directed Affiliated to make the reduction to $10 million on behalf of Cammeby's; and "clearly manifested" in this context means that that employee or agent of Cammeby's, once obtaining this knowledge, made clear by some writing or conversation or other conduct that he or she intentionally approved of what Alliant had done in obtaining such a reduction. Both these requirements must be met.

Tr. 1907:18-1908:5, 1909:7.

The jury found Alliant liable on Cammeby's negligence claim, meaning that the jury did not credit Alliant's ratification defense. See Verdict.

Alliant now raises two challenges to the Court's response to the jury's notes. First, Alliant argues that the Court erred in its response to the jury regarding the requirements of "full knowledge" on Cammeby's part. The Court stated that "'full knowledge' in this context means that an employee or agent of Cammeby's who had actual authority to approve a reduction in insurance coverage knew unequivocally that Alliant had directed Affiliated to make the reduction to $10 million on behalf of Cammeby's." But, according to Alliant, "the correct inquiry as

9

to 'knowledge' is whether Cammeby's was aware of the effect of the transaction – that is, the reduced limit – not the specifics of the how's and why's as to Alliant's direction to Affiliated." Def. Br. at 22.

As an initial matter, Alliant may have waived this objection by failing to object to this point in its original objections to the jury instructions raised during the charging conference on August 4, 2011, see Pl. Opp. Br. at 29 n.49; Tr. 1369-1432;  1902:14-1903:2. But assuming arguendo that Alliant preserved this objection, the Court finds that the Court's response to the jury's notes, read in context, was not erroneous in this respect. The jury would have reached the ratification issue only if it had already determined that Alliant had been negligent. See Tr. 1901:17-19. The jury instructions, "taken as a whole," BAII Banking Corp., 985 F.2d at 696, conveyed to the jury the accurate instruction that the relevant issue was whether Cammeby's had full knowledge that the Coverage Sublimit was reduced to $10 million as a consequence of Alliant's actions. Therefore, the Court's response to the jury as to the requisite knowledge on Cammeby's part was not erroneous.

However, Alliant's second objection to the Court's response to the jury, regarding the meaning of "clearly manifested," has more merit. Specifically, Alliant argues that the Court's

10

response precluded the jury from finding that Cammeby's ratified the Coverage Sublimit reduction by silence or acquiescence, even though New York law permits a finding of ratification on such bases. See Def. Br. at 22-24; Defendant Alliant Insurance Services, Inc.'s Reply Brief in Support of Its Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial ("Def. Reply Br.") at 16-19.

Under New York law, ratification "may be express or implied, or may result from silence or inaction." In re Adelphia Recovery Trust, 634 F.3d 678, 692 (2d Cir. 2011). "Mere negligence is not ratification [,] . . . [but] an act, such as an acceptance of benefits, may constitute a ratification, and acquiescence may give rise to an implied ratification . . . " In re Adelphia, 634 F.3d at 693 (alterations in the original). Furthermore, ratification

> must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts of language . . . However, the intent can be implied from knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence or where the effect of the contract depends upon future events.

Chemical Bank v. Affiliated FM Ins. Co., 169 F.3d 121, 128 (1999), vacated on other grounds sub nom. Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120 (2d Cir. 2003) (internal

11

citations and quotation marks omitted). See also Am. Gen. Life Ins. Co. v. Salamon, No. 09 Civ. 5428, 2011 WL 976411, at *4 (E.D.N.Y. Mar. 16, 2011), aff'd, 483 Fed. App'x 609 (2d Cir. 2012) ("While plaintiff correctly states that [r]atification must be performed with full knowledge of the material facts relating to the transaction and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language, plaintiff fails to acknowledge that the required intent may be implied from knowledge of the principal coupled with a failure to timely repudiate.") (internal citations and quotation marks omitted).

Against this background, the Court's response to the jury, that "clearly manifested" meant that a Cammeby's employee or agent with the relevant knowledge "made clear by some writing or conversation or other conduct that he or she intentionally approved of what Alliant had done in obtaining such a reduction," erroneously suggested that silence or acquiescence would be insufficient for ratification, and that a more active step was needed. To be sure, the Court also declined to charge specifically that "clearly manifesting" intent did not include silence or acquiescence, see Tr. 1906:16-21, and agreed to use "other conduct" in place of "other act," see Tr. 1909:6-8. Further, "other conduct" could theoretically refer to inaction,

12

see, e.g., Black's Law Dictionary (8th ed. 2004). Nevertheless, the most reasonable inference from the Court's answer to the jury's question was that the ratification defense held only if Cammeby's took an affirmative step to communicate its intent to ratify, and this is not New York law.

It is true that the Court had earlier said it might reconsider this matter if Cammeby's were able to marshal in summation meaningful evidence of ratification by silence. See Tr. 1423:1-4 ("I'm not going to say before hearing your summation that there is no way that silence in this situation couldn't be a clear manifestation . . ."). However, after counsel, briefly but adequately, made such an argument on summation, see Tr. 1861:16-17 ("So, they knew the limit was $10 million. And they never asked Alliant to reinstate the $30 million."), the Court did not alter its charge.

The Court also declines to accept Cammeby's argument that the error was harmless. See Pl. Opp. Br. at 33-35. Alliant had presented evidence, even if it was disputed, that persons with authority at Cammeby's knew about the Coverage Sublimit reduction, see, e.g., Forman Declaration, Exhibit 28, and that Cammeby's accepted the benefits of this reduction in the form of a lowered premium, see Forman Declaration, Exhibits 34-41; Tr. 1654:1-4. The jury might have found that Cammeby's failure to

13

object to the lowered sublimit under these circumstances constituted silence or acquiescence of a kind that could validate Alliant's ratification defense. Although the jury was certainly not compelled to find in Alliant's favor on this point, one cannot reasonably infer that "it is clear that [the erroneous instruction] did not influence the jury's verdict." Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 390 (2d Cir. 2006).

For these reasons, the Court hereby grants Alliant's motion for a new trial of Cammeby's negligence claim and Alliant's ratification defense. Counsel representing Cammeby's and Alliant are directed to call Chambers jointly by 5 p.m. on Thursday, January 28, 2016 to set a new trial date.

The Clerk of Court is directed to close docket number 271.

Dated:   New York, NY
         January 26, 2016                    JED S. RAKOFF, U.S.D.J.